**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 15-cr-00152-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. LUIS ALFONSO ARAGON GALLEGOS,

      Defendant.

---

## PLEA AGREEMENT

---

      The United States of America, by and through David Tonini, Assistant United States Attorney, and defendant, Luis Alfonso Aragon Gallegos, personally and through counsel, Edward Harris, Assistant Federal Public Defender, submit the following Plea Agreement.

## I. **PLEA AGREEMENT**

### A. **Defendant's Obligations**

#### 1. **Count of Conviction**

      The defendant agrees to plead guilty to the 23-Count Indictment. Counts 1-22 charge violations of 18 U.S.C. § 2251(a) and (e) – Production of Child Pornography. Count 23 charges a violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) – Possession of Child Pornography. The defendant also agrees to admit the Forfeiture Allegation contained in the Indictment.

#### 2. **Defendant's Abandonment of Right, Title, and Claim to Seized Property**

      The United States of America and the defendant hereby agree that any property subject to forfeiture pursuant to 18 U.S.C. § 2253, seized from the defendant and currently in the custody

1



and/or control of the Garfield County Sheriff's Office ("GCSO"), was properly seized and that such property constitutes evidence, contraband, or fruits of the crimes to which the defendant has pleaded guilty. As such, the defendant hereby relinquishes all claims, title, and interest the defendant has in such property, specifically (1) an HP Envy 15 laptop computer, serial number CNV2161NYV; and (2) a Toshiba external hard drive, serial number 62HFL4GRTSX3, to the United States of America with the understanding and consent that the GCSO, or other appropriate agency, is to destroy the property described above forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

As part of the plea agreement in this case, the defendant hereby states under penalty of perjury that the defendant was the sole and rightful owner of the previously referenced property, and that the defendant hereby voluntarily abandons all right and claim to this property.

### B. Government's Obligations

#### 1. Forego Additional Charges

If the defendant enters an unconditional plea of guilty to Counts 1-23 of the Indictment and otherwise fulfills all obligations outlined above, the government agrees not to charge the defendant with any other violations of law now known to the United States Attorney's Office for the District of Colorado.

#### 2. Acceptance of Responsibility

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 3 point reduction in the offense level for acceptance of responsibility, pursuant to § 3E1.1, is appropriate and agrees to make the appropriate motion at sentencing.

## C. Effect of Withdrawal from Plea Agreement

The parties stipulate and agree that the government may withdraw from this Plea Agreement under any of the following circumstances:  1) if the defendant does not plead guilty to Counts 1-23 of the Indictment; 2) if the Court does not accept the defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the district court or on direct or collateral appeal; 4) if the defendant, at any time after judgment is entered, obtains dismissal, reversal or remand of the counts of conviction for any reason; or 5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

## II. ELEMENTS OF THE OFFENSES

The parties agree that the elements of the crime of Production of Child Pornography, 18 U.S.C. § 2251(a), are as follows:

*One*:   Defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

*Two*: That the Defendant acted with the purpose of producing a visual depiction of that conduct;

*Three*:  The Defendant knew or had reason to know that (a) the visual depiction would be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, or that (b) the visual depiction was produced using materials that have been transported in or affecting interstate or foreign commerce by any means, including by computer, or (c) that the visual depiction actually was transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

3

The parties agree that the elements of the crime of Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B), are as follows:

*One*:  Defendant knowingly possessed any computer disk or other material that contained an image of child pornography;

*Two*:  That the child pornography has been mailed or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or was produced using materials that have been mailed, or that have been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and

*Three*:  That when the defendant possessed the child pornography, he knew it was child pornography.

Possession is defined as "the holding or having something material or immaterial as one's own, or in one's control." *United States v. Bass*, 411 F.3d 1198, 1201 (10th Cir. 2005) (child pornography possession case).

"Child pornography" is defined as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.[1]

"Sexually explicit conduct" means actual or simulated:

1.      sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; or

---

[1] 18 U.S.C. § 2256(8)(A).

2.      bestiality; or

3.      masturbation; or

4.      sadistic or masochistic abuse; or

5.      lascivious exhibition of the genitals or pubic area of any person.[2]

### III. STATUTORY PENALTIES

Based on the defendant's criminal history known at this time, the statutory penalty for a violation of 18 U.S.C. § 2251(a) is not less than 15 years nor more than 30 years imprisonment, not more than a $250,000 fine, or both. 18 U.S.C. § 2251(e). Based on the defendant's criminal history known at this time, the statutory penalty for a violation of 18 U.S.C. § 2252A(a)(5)(B) is not more than 10 years imprisonment, not more than a $250,000 fine, or both. 18 U.S.C. § 2252A(b)(2). Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty to violating 18 U.S.C. § 2251 and 2252A, the term of supervised release is not less than 5 years and up to a term of life. Defendant will also be required to pay $2,300 in special assessment fees.

The parties do not believe the following provision is applicable, but if the defendant has been previously convicted of under Chapter 110, 71, 109A, 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 25 years nor more than 50 years imprisonment, not more than $250,000 fine or both, and the penalty for violation of 18 U.S.C. § 2252A(a)(5)(B) is not less than 10 years nor more than 20 years

---

[2] 18 U.S.C. § 2256(2)(A).

imprisonment, not more than $250,000 fine or both.

The Court will impose a separate sentence on each count of conviction and may, to the extent permitted by law, impose such sentences either concurrently with or consecutively to each other.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury. If the defendant is not a United States citizen, this conviction will result in the defendant's removal from the United States once he has completed any sentence of imprisonment.

### A. Future Violations of Supervised Release

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 3 years without credit for pre-release imprisonment or time previously served on post-release supervision; if the defendant commits any criminal offense under Chapter 109A, 110, or 117, or Title 18, United States Code, Sections 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the defendant shall be sentenced to not less than 5 years and up to the maximum term of imprisonment for the offense, as set forth above.

### B. Registration under the Sex Offender Registration and Notification Act

The defendant has been advised and he understands that under the Sex Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d), upon his release from prison and as a condition of his supervised release, if any, he will be subject to

federal and state sex offender registration requirements, and that those requirements may apply throughout his life. The defendant understands he must register as a sex offender and must keep the registration current with the state sex offender registration agency in each of the following jurisdictions: where he was convicted, where he resides, where he is employed, and where he is a student. The defendant understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he is or will be an employee or a student, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant shall comply with requirements to periodically verify in person his sex offender registration information. The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

### C. **Restitution**

Defendant acknowledges that pursuant to 18 U.S.C. § 2259(a), the Court is required to order restitution for the full amount of the victims' compensable losses as defined at 18 U.S.C. § 2259(b)(3) and(c) as may be proved by the government or stipulated to by the parties. Defendant will be required to pay restitution for the full amount of the victims' losses to all victims of the offenses to which defendant is pleading guilty. For purposes of this paragraph, the term "victim"

is defined in 18 U.S.C. § 2259(c), and the term "full amount of the victims' losses" is defined in 18 U.S.C. § 2259(b)(3). Defendant further understands the amount of loss sustained by each victim will be determined during the course of preparation of the presentence investigation report. Defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source. Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims. Defendant understands full restitution will be ordered regardless of defendant's financial resources. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea. Defendant further agrees to comply with any restitution order entered at the time of sentencing. Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate. Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty pleas that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offenses of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and

computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein, which do not contradict the facts to which the parties have stipulated, and which are relevant to the guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4, 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision. In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information." § 6B1.4 Comm.

The parties agree that the government's evidence would be as follows:

A. **Summary of the Offense Conduct**

The defendant produced approximately 110 images and/or videos of Minor # 1 while she performed oral sex on him and he penetrated her vaginally and anally with his penis and finger. Minor # 1 was between 3 and 7 years old when the images and videos were created. These images and videos were recovered from a folder that bore a similar name to Minor # 1's name which was on the defendant's computer and an external hard drive.

In addition, approximately 266,000 images and 16,100 videos of child pornography, which did not involve Minor #1 and were not produced by the defendant, were found on the defendant's computer and two external hard drives. The majority of these files were prepubescent children, including infants, who were recorded either nude in a sexually provocative manner or engaged in a sex acts with themselves, other children, or adults.

Computer forensic data associated with the files involving Minor # 1 show that sexual assaults occurred on 22 days, sometimes in multiple settings during the day. The recovered files were dated between January 2011 to October 2011 and in August 2014, on the dates charged in Counts 1-22 of the Indictment. During a child forensic interview, Minor # 1, who is now eight years old, said that the defendant's conduct continued until he was arrested in 2015.

The defendant's face and other identifiable body features are seen in the images and videos. Minor # 1 gagged and cried during several of the recorded assaults. After officers seized his computer, the defendant admitted to Minor # 1's mother that there were pictures on that computer of Minor # 1 performing oral sex on him.

### B. The Peer-to-Peer (P2P) Investigation

On January 29, 2015, Garfield County Sheriff's Office (GCSO) Forensic Technician Rhodes was conducting investigations into the distribution of child pornography files on the Ares P2P file sharing network. Ares is a P2P network used to exchange files between computers. Tech Rhodes identified a computer with the IP address 50.183.156.211 as a source of investigative interest because it contained files that he suspected were child pornography (based on their digital fingerprint/hash/filename).

A query on the IP address 50.183.156.211 was conducted and it was registered to Comcast Cable Communications Holdings, Inc. in the area of Carbondale, Colorado. Tech Rhodes downloaded four files, all from the computer at the target IP address. Each of those files constituted child pornography and they were as follows:

- Filename: !!! new 0604 !!! luvnlilly babyj (pthc) (latina) (cumshot) (best).avi. The video depicts a very young prepubescent female child lying on her back while an adult male

10

masturbates himself and rubs his penis on the child's vagina.

- Filename: ((hussyfan)) (pthc) -k- k !!!new - rca (marissa) - young girl fuck brother(2).avi. Only a portion of the file downloaded. In it, a nude prepubescent female child is seen lying on a bed. She begins to sit up just as a nude adult male enters the screen. The video hangs for a short time and then cuts to the female child performing oral sex on the male. The video hangs again, then cuts to the male attempting to perform anal sex with the child.

- Filename: (pthc) two asian kids and a man #012.avi. It begins with a male having sexual intercourse with a female, but due to the camera angle it is difficult to determine the age of the female. The video hangs for a short time, and then it cuts to a prepubescent female child performing oral sex on an adult male. The legs of another child are visible in the shot and this child eventually is seen masturbating the male.

- Filename: !!!new!!! (pthc) lena daughter giving blowjob 06 (map).mpg. This video depicts a minor female child performing oral sex on an adult male.

This information was included in an affidavit for a court order for the production of records which was issued and then served on Comcast. Comcast responded with an account that was in the name of the defendant's spouse with an address in Glenwood Springs, Colorado.

On March 16, 2015, based on the above facts and other investigation into the residents of the address provided by Comcast, Investigator Damuth of the Garfield County District Attorney's Office obtained a search warrant for that address. The search warrant authorized the search and seizure of computers and other digital devices contained within the residence.

11

## C. <u>The Search of Defendant's Residence</u>

On March 17, 2015, the search warrant was executed at the defendant's home.  There were several residents present at the time of the search, including the defendant, his spouse, and his sister (all adults).  There were many electronic devices in the household, and Investigator Damuth previewed the devices while on-scene in order to determine what should be seized.  One device was an HP Envy 15 laptop that was connected to a television in the bedroom that was used by the defendant and his wife.  Investigator Damuth powered on the HP Envy laptop and found there were two user accounts on the computer, one named Luis and another named Luis2.  However, they were both password-protected such that Investigator Damuth could not access them without the correct password.

Investigator Damuth asked the defendant, who he recognized as being named "Luis" from the pictures included on his Colorado and Mexico identification documents, if he could speak to him.  They stepped outside away from the other residents.  Investigator Damuth told the defendant that he did not have to speak if he didn't want to.  Then Investigator Damuth told the defendant that he would like to examine the computers while on-scene in order to determine if the files that he was looking for would be present.  Investigator Damuth asked the defendant if he would be willing to provide the passwords for his devices so Investigator Damuth could access them with a triage program.  Investigator Damuth reminded the defendant that he did not have to do this if he did not want to.  Defendant provided Investigator Damuth with the password "youngstudd" which he said would allow access to both of the user accounts on the HP Envy laptop.

Investigator Damuth used this password to access the computer, and it worked.  He used

12

computer forensic hardware and software to preview the contents of the device. The preview software identified 34 child pornography videos and 4,428 pictures of child pornography. Among the videos were the four described above that Tech Rhodes had downloaded.

Investigator Damuth then asked the defendant if he would like to come to the police department for an interview regarding the case. Defendant told Investigator Damuth that he would and they agreed that he would meet Investigator Damuth at the department in about 10 minutes. The defendant ultimately did not go to the department and was not interviewed.

Using the information he had, on March 17, 2015, Investigator Damuth obtained a Colorado state arrest warrant for the defendant for crimes related to the child pornography that had been downloaded from, and found on, the defendant's computer. The defendant was arrested at his home on that same day.

### D.  The Defendant's Statements Concerning Minor # 1

Later that day, an Elementary School Counselor called the River Bridge Child Advocacy Center to report that a student's mother had informed the school's counselor that the defendant had made a confession to her regarding the student, Minor #1. As of March, 2015, Minor #1 was under the age of 8 years old. Glenwood Springs Police Officer Gronbeck interviewed Minor #1's mother. She told Officer Gronbeck that after the search of his house, the defendant told Minor #1's mother that he had video on his computer of Minor #1 performing oral sex on him. She said that the defendant told her that the sex abuse occurred for the past 3 years and that it had occurred as recently as most recently, two weeks earlier. This would mean that the defendant's sexual abuse began when Minor #1 was under 5 years old.

Minor #1 was forensically interviewed that day, but did not disclose the sexual abuse.

### E. The Review of the Defendant's Digital Media

#### 1. Produced Images and Videos

Later on March 17, 2015, Investigator Damuth, who was analyzing the defendant's HP

Envy 15 laptop computer at the GCSO Forensic Computer Lab, located pictures of Minor # 1 on

that computer. On the "Luis" user account's desktop, in a folder named "todo", Investigator

Damuth found another folder with a title that is substantially similar to Minor # 1's first name.

That folder contained a series of 8 pictures of Minor # 1 that depicted her nude from the waist

down, exposing her vagina, while a male, later determined to be the defendant, stood between

her legs with his erect penis near her vagina. The pictures progress through time, and ultimately

depict the male ejaculating on her vagina.

In the Recycle Bin for the Luis user, Investigator Damuth located a deleted folder that

had been named "confiblack" and had originally been located in the "todo" folder on the Luis

user's desktop. The folder and its contents had been deleted on February 23, 2015.

The "confiblack" folder contained a series of 102 videos and pictures that depict Minor #

1 engaged in sex acts with an adult male, again later determined to be the defendant. The

majority of the videos are from the perpetrator's point of view and his face is not visible,

however, in at least two videos the camera was moved while recording and the defendant's face

is visible. Additionally, the defendant is identifiable because of distinct discolorations on his

penis that were visible throughout the videos and pictures. Law enforcement later took pictures

of the defendant's penis to confirm it was the defendant seen sexually abusing Minor #1 – they

determined it was.

Thereafter, a full forensic examination was completed by Tech Rhodes on the digital

devices seized from the defendant's residence.  The HP Envy laptop was found to contain

approximately 110 video and image files of the defendant engaged in sexual acts with Minor # 1,

who was under the age of 5 in most of the images and under the age of 8 in others.  The videos

have sound.  They showed Minor # 1 performing oral sex upon the defendant.  Minor # 1 is often

heard crying while the defendant can be heard in the videos giving her directions or commands.

In one video the defendant places what appears to be frosting on his penis and directs Minor # 1

to perform oral sex on him.  There are also videos depicting the defendant giving Minor # 1

candy when she performs oral sex on him.  Several of the files also show the defendant

attempting to put and putting his penis in Minor # 1's vagina and/or anus.  Several of the files

show the defendant masturbating and ejaculating onto Minor # 1's vagina, stomach, and face.

Minor # 1 is often heard crying and crying out when the defendant ejaculated.

The images and videos involving Minor # 1 contained Exchangeable Image File Format

(EXIF) metadata that showed, among other things, the dates the defendant created the files and

the devices he used to create them.  All of the images and videos involving Minor # 1 were

created in Colorado using a Samsung Galaxy S4 cellular telephone, an iPhone, or an iPod.  None

of those devices were manufactured in the State of Colorado.  The EXIF data indicated that the

files were created on the following dates:  January 9, 201, February 13, 2011, February 14, 2011,

February 18, 201, February 20, 2011, February 21, 2011, February 27, 2011, February 28, 2011,

March 10, 2011, March 13, 2011, March 20, 2011, March 21, 2011, March 26, 2011, April 2,

2011, April 3, 2011, April 15, 2011, April 19, 2011, April 19, 2011, April 30, 2011, October 8,

2011, October 18, 2011, August 13, 2014, and October 5, 2014.

Defendant admits the following:  that he employed, used, persuaded, induced, enticed, or

coerced Minor # 1 to engage in sexually explicit conduct for the purpose of producing a visual

depiction of that conduct on the dates set forth above and in the Indictment; that knew and had

reason to know that the visual depiction was produced using materials that have been transported

in or affecting interstate or foreign commerce by any means, including by computer; that the

offense involved a minor who had not attained the age of 12 years; that the offense involved

material portraying sadistic or masochistic conduct or other depictions of violence; that the

offense involved the commission of a sexual act and conduct described in 18 U.S.C. § 2241(a);

that the defendant was a relative of Minor # 1 and/or that Minor # 1 was in the custody, care, or

supervisory control of the defendant when he committed these acts.

### 2. Possessed Images and Videos

Tech Rhodes also found approximately 44,000 images and 1,300 videos of child

pornography depicting other minor children on the HP Envy laptop.  These images and videos do

not depict the defendant.  Law enforcement also seized a Toshiba 1 Terabyte external hard drive

from the defendant's bedroom on March 17, 2015.  On it was approximately 184,000 images and

14,000 videos of child pornography of other children.[3]  Finally, a 500GB Western Digital

external hard drive that was seized from the defendant's bedroom on March 17, 2015 was found

to contain approximately 37,000 images and 450 videos of child pornography.  All of these files

were organized into file folders with names generally fitting the descriptions of the images the

folders contained.  Some of these file folders were named as follows: "BABYS", "Baby sluts",

"4 3 YO", "7 6 5 YO", "11 10 9 8 YO", and "12 13 YO".  In the child pornography realm, "YO"

---

[3] Many of the images of Minor # 1 that were found on the HP Envy laptop were also found on
the Toshiba external hard drive in an "orphaned" folder.  An orphaned file is a file that has been
deleted but that may still reside on the hard drive.

is generally an acronym for "years old."

Between the three devices, there were found over 266,000 images and 16,100 videos of child pornography. The majority of the images and videos depict adults engaged in sex acts with prepubescent children, including infants and toddlers. The images and videos were submitted to the National Center for Missing and Exploited Children (NCMEC). NCMEC identified 25,338 known files containing pornographic images of child victims. Most of the identified files were produced in states other than Colorado or in foreign countries. NCMEC has not seen images or videos of Minor # 1 in connection with other investigations and no forensic evidence was found indicating that the defendant distributed pornographic files related to Minor # 1.

Defendant admits that the images and videos he possessed were child pornography as defined in 18 U.S.C. § 2256(8)(A); that he knew they were child pornography when he possessed them; that the material involved minors who had not attained the age of 12 years; that the offense involved the use of the Internet to distribute of child pornography (not involving Minor # 1) to another individual; that the offense involved material portraying sadistic or masochistic conduct or other depictions of violence; that he used a computer to commit the offense; that the offense involved more than 600 images; and that the child pornography had been mailed or had been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, and was produced using materials that have been mailed, or that have been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, when the defendant possessed them in Colorado.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of sentence in this case is governed by Title 18, United States Code, Section 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In cases involving child crimes and sexual offenses, Congress passed Title 18, United States Code, Section 3553(b)(2)(A); however, consistent with the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220 (2005), the parties agree that provision does not mandate this Court to impose a within-guidelines sentence.

In order to aid the Court, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The defendant agrees and consents that facts that determine the offense level will be found by the Court, by a preponderance of the evidence, and that the Court may consider and use any reliable evidence, including hearsay and the facts outlined in the Presentence Report. The parties further agree that the stipulation of facts in this plea agreement will also be used by the Court in determining the sentencing guideline range.

The parties provide the following estimated guideline range for the Court's consideration pursuant to 18 U.S.C. § 3553(a)(4). The range and calculation of that guideline range is an estimate only, and the parties are not bound if the probation department determines that a different guideline range applies. Any estimation by the parties regarding the appropriate

advisory guideline application does not limit the positions the parties may take at sentencing on the appropriate sentence for the Court to impose.  The Court may impose any sentence, up to the statutory maximum for each count, and may order that those sentences be served consecutively, regardless of any advisory guideline range computed, and the parties agree that the Court is not bound by any position of the parties.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum terms when imposed consecutively, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

To the extent the parties disagree about the estimated guideline sentencing factors, the computations below identify the factors which are in dispute.  § 6B1.4(b).

**Offense Level Counts 1-22**:  The base guideline is § 2G2.1.

A.       The base offense level for this offense is 32.  § 2G2.1(a).

B.       Because the offense involved a minor who had not attained the age of twelve years, there is an increase of +4 levels.  § 2G2.1(b)(1).

C.       Because the offense involved the commission of a sexual act and conduct described in 18 U.S.C. § 2241(a), there is an increase of +4 levels.  § 2G2.1(b)(2)(B).

D.       Because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, there is an increase of +4 levels.  § 2G2.1(b)(4).

E.      Because the defendant was a relative of the minor involved in the offense or because the minor was in the custody, care, or supervisory control of the defendant at the time the crimes were committed, there is an increase of +2 levels.  § 2G2.1(b)(5).

F.      The adjusted offense level for Counts 1-22 is 46.

**Offense Level Count 23**:  The base guideline is § 2G2.2.

G.      The base offense level for this offense is 18.  § 2G2.2(a)(1).

H.      Because the pornographic material involved a prepubescent minor and minors who had not attained the age of 12, there is an increase of +2 levels.  §2G2.2(b)(2).

I.      Because the offense involved distribution other than the distribution described in § 2G2.2(b)(3)(A)-(E), there is an increase of +2 levels.  § 2G2.2(b)(3)(F).

J.      Because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, there is an increase of +4 levels.  § 2G2.2(b)(4).

K.      Because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, there is an increase of +5 levels.  § 2G2.2(b)(5).

L.      Because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, there is an increase of +2 levels.  § 2G2.2(b)(6).

M.      Because the offense involved 600 or more images, there is an increase of +5 levels.  § 2G2.2(b)(7)(D).

N.      The adjusted offense level for Count 23 is 38.

**Adjustments**

O.      No victim-related, role-in-offense, and/or obstruction adjustments apply.

P.      The Counts do not group, and Counts 1-22 are each a separate unit.  § 3D1.2(d),

3D1.4.  Because there are more than 5 units, there is an increase of +5 levels.  § 3D1.4.

Q.      Defendant should receive a decrease in the offense level by -2 based upon his

acceptance of responsibility.  § 3E1.1(a).  Defendant should also receive a decrease in the

offense level by –1 for timely notifying the government.  § 3E1.1(b).  At sentencing, the

government will make the appropriate motion for the one-point reduction.

R.      Because the instant offenses of conviction (other than Count 23) are each  a

covered sex crime, because neither § 4B1.1 nor § 4B1.5(a) applies, and because the

defendant engaged in a pattern of activity involving prohibited sexual conduct, there is an

increase of +5 levels.  § 4B1.5(b).

S.      The adjusted offense level is 53.

**Criminal History Category**

T.      The parties acknowledge and agree that the estimation regarding Defendant's

criminal history is tentative.  Defendant acknowledges that the criminal history will be

further investigated by the United States Probation Department and ultimately determined

by the Court.  Defendant further acknowledges that any additional facts regarding the

criminal history can greatly affect the final guideline range and result in a longer term of

imprisonment.  Based upon the facts known at this time regarding Defendant's criminal

history, the parties believe that Defendant falls within Criminal History Category

("CHC") 1.  § 4A1.1.

**Guideline Ranges**

U.      The guideline range resulting from the estimated offense level of 53 and the

estimated criminal history category of 1 is life imprisonment.  However, the guideline

range is limited to the statutory maximum sentences when imposed consecutively.  The

statutory maximum here when imposed consecutively is 670 years.  § 5G1.2(d).

V.       Pursuant to § 5E1.2, assuming the estimated offense level of 53, the fine range for

this offense would be $25,000 to $250,000, plus applicable interest and penalties.

W.       Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term

of supervised release, that term shall be at least 5 years but not more than life.

## VII.  ENTIRE AGREEMENT

This document states the parties' entire agreement.  There are no other promises,

agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or

implied.  In entering this agreement, neither the government nor the defendant have relied, or are

relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.


Date:  1/13/16

LUIS ALFONSO ARAGON GALLEGOS
Defendant


Date:  1/13/16

EDWARD HARRIS
Attorney for Defendant


Date:  1-12-16

DAVID TONINI
Assistant U.S. Attorney